AUDREY STRAUSS
United States Attorney for the
Southern District of New York
By: MÓNICA P. FOLCH
        JENNIFER JUDE
Assistant United States Attorneys
86 Chambers Street, 3rd floor
New York, New York 10007
(212) 637-6559/2663
monica.folch@usdoj.gov
jennifer.jude@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>                    v.<br><br>EZ LYNK, SEZC; PRESTIGE WORLDWIDE,<br>SEZC; BRADLEY GINTZ; and THOMAS WOOD,<br><br>          Defendants. | **Case No.** _____<br><br><br>**COMPLAINT** |

The United States of America, by and through its attorney Audrey Strauss, Acting United

States Attorney for the Southern District of New York ("United States" or "Government"),

acting on behalf of the Administrator of the United States Environmental Protection Agency

("EPA"), alleges for its complaint against defendants EZ Lynk, SEZC ("EZ Lynk"), Prestige

Worldwide, SEZC ("Prestige"), Bradley Gintz, and Thomas Wood (collectively "Defendants")

as follows:

## NATURE OF ACTION

1.      For more than four years, EZ Lynk has violated the Clean Air Act—and put the

public's health at risk—by manufacturing and selling a product that allows drivers to illegally

1

disable their motor vehicles' emissions controls at the push of a button. EZ Lynk's product, the "EZ Lynk System," consists of three components: the Auto Agent, a physical device that plugs into vehicle computer systems to install software (called "delete tunes") designed to "delete" emissions controls; the EZ Lynk Cloud, a cloud computing platform that stores delete tunes; and the Auto Agent App, a smartphone application that connects the Auto Agent to the EZ Lynk Cloud, allowing customers to acquire and install delete tunes through their smartphones.

2.      EZ Lynk has enabled many thousands of drivers across the United States to use the EZ Lynk System to "delete" emissions controls from Ford, GMC, and Chrysler trucks, among other vehicles. Indeed, EZ Lynk actively encourages drivers to do so. Among other things, EZ Lynk maintains an online forum (the "EZ Lynk Forum") where EZ Lynk representatives promote drivers' experiences disabling emissions controls using the EZ Lynk System.

3.      On this EZ Lynk Forum, drivers regularly post about "huge improvements" they have experienced after using the EZ Lynk System to go "from stock [emissions controls] to deleted [emissions controls]," noting that "the guys at EZ Lynk are doing great work." EZ Lynk representatives often respond to such posts on the forum, providing technical assistance, offering information, or just "loving" the posts. Some drivers have used the EZ Lynk Forum to urge others to keep secret their use of the EZ Lynk System to defeat emissions controls: "If everyone keeps their mouth shut about deleting sooner or later the EPA will calm down."

4.      Disabling emissions controls from vehicles presents a serious threat to human health. Such emissions are linked to premature death and cause heart and lung disease, heart attacks, and aggravated asthma, among other serious illnesses. To prevent this threat, the Clean Air Act imposes stringent standards for the emission of air pollutants from vehicles and prohibits

the manufacture, sale, and installation of any device intended to disable vehicle controls designed to comply with those emissions standards. 42 U.S.C. §§ 7521(a), 7522(a).

5.     EZ Lynk has violated the Act by manufacturing and selling the EZ Lynk System, a product used by drivers to defeat emissions controls. EZ Lynk's illegal activity is compounded by its refusal to provide the Government basic information about the manufacture, sale, and use of the EZ Lynk System, also in violation of the Act.

6.     Defendants Gintz and Wood founded, own, and control EZ Lynk, including with respect to the violations at issue. Defendant Prestige is owned by Defendant Gintz and Defendant Wood and sells the EZ Lynk System to distributors that sell the devices within the United States.

7.     The United States of America (the "United States" or the "Government") brings this action under Sections 203, 204, and 205 of the Clean Air Act, 42 U.S.C. §§ 7522, 7523, and 7524, seeking injunctive relief and the assessment of civil penalties against each Defendant for violations of the Act.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of this action. 42 U.S.C. §§ 7523, 7524; 28 U.S.C. §§ 1331, 1345, 1355.

9.     Venue is proper in this District pursuant to 42 U.S.C. § 7524 and 28 U.S.C. § 1391(b) and (c), because some of the violations occurred in this judicial district and because Defendants are subject to the Court's personal jurisdiction.

## DEFENDANTS

10.     Defendant EZ Lynk is a "special economic zone" company organized in the Cayman Islands. EZ Lynk manufactures, offers to sell, and sells the EZ Lynk System in the United States, including in the Southern District of New York. EZ Lynk also provides technical

support for users of the EZ Lynk System in the United States, including in the Southern District of New York. EZ Lynk was formed on or about July 9, 2014, and operates a facility located at 125 Owens Roberts Drive, George Town, Grand Cayman, Cayman Islands. "EZ Lynk" is an active trademark registered with the U.S. Patent and Trademark Office by Defendant EZ Lynk on June 13, 2017.

11.     Defendant Prestige is a "special economic zone" company organized in the Cayman Islands and owned by Defendant Gintz and Defendant Wood. Prestige facilitates the sale of the EZ Lynk System in the United States by purchasing the Auto Agent devices[1] from EZ Lynk, and selling the devices to distributors, including distributors that sell the devices within the United States. "Prestige Worldwide" is a trademark that was registered with the U.S. Patent and Trademark Office by Defendant EZ Lynk on June 23, 2016, and abandoned on February 24, 2020.

12.     Defendant Gintz is an individual who currently resides in Lake Charles, Louisiana. Gintz is a co-founder and president of EZ Lynk. He is also a director of EZ Lynk. Along with Defendant Wood, Gintz controls, directs, and manages the marketing and sale of the EZ Lynk System as well as the technical support for the EZ Lynk System. Gintz owns one-half of EZ Lynk through Franklin Spec, Inc., a Louisiana corporation he wholly owns. Gintz is also part-owner of Defendant Prestige. Gintz also owns a Louisiana-based company, Calvin's Auto Repair, LLC, which operates a website called Calvin's Online that, as of January 2020, was selling the EZ Lynk System bundled with software designed to defeat emissions controls.

---

[1] In 2018, EZ Lynk began selling a later version of its Auto Agent product, referred to as "Auto Agent 2.0." For the purpose of this Complaint, the term "Auto Agent" refers to both the original Auto Agent product and Auto Agent 2.0.

13.    Defendant Wood is an individual who currently resides in Denver, Colorado. Wood is a co-founder and director of EZ Lynk. Wood serves as director of engineering of EZ Lynk. Along with Defendant Gintz, Wood controls, directs, and manages the marketing and sale of the EZ Lynk System as well as the technical support for the EZ Lynk System. Wood owns one-half of EZ Lynk through Cavologies Enterprises, Inc., a Louisiana corporation he wholly owns. Wood is also part-owner of Defendant Prestige. Wood also owns TechIT, LLC, a Utah-based company that provides customer support for the EZ Lynk System.

14.    Defendants are all "persons" within the meaning of Section 302(e) of the Clean Air Act, 42 U.S.C. § 7602(e), and are subject to the requirements of Title II, Part A of the Clean Air Act, including Section 203(a)(3)(B) of the Clean Air Act, 42 U.S.C. § 7522(a)(3)(B).

## REGULATORY BACKGROUND

15.    This action arises under Title II of the Clean Air Act (the "Act"), as amended, 42 U.S.C. §§ 7521-7590, and the regulations thereunder relating to the control of emissions of air pollution from motor vehicles and motor vehicle engines.

### A.    The Clean Air Act's Regulation of Harmful Motor Vehicle Emissions

16.    Congress enacted the Act "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

17.    Title II of the Clean Air Act and the regulations promulgated thereunder establish stringent standards for the emission of air pollutants from motor vehicles and motor vehicle engines that "cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7521(a). These pollutants include, but are not limited to particulate matter ("PM"), nitrogen oxides ("NO$_x$"), non-methane hydrocarbons ("NMHC"), and carbon monoxide ("CO"). 42 U.S.C. § 7521(a)(3)(A).

5

18.     PM is a form of air pollution composed of microscopic solids and liquids suspended in air. PM has been linked to a range of serious respiratory health problems, including an increased risk of lung cancer and respiratory disease.

19.     $NO_x$ and NMHC are reactive gases that play a major role in producing ozone (also known as "smog"). Breathing ozone can worsen bronchitis, emphysema, and asthma. Breathing ozone can also trigger a variety of health problems, including chest pain, coughing, throat irritation, and congestion. Children are especially vulnerable to negative health impacts from exposure to ozone because their lungs are still developing. Children are also more likely to have increased exposure to ozone from playing outdoors during times of high ozone levels.

20.     CO is a highly toxic gas that can cause headaches, dizziness, vomiting, nausea, loss of consciousness, and death. Long-term exposure to CO has been associated with an increased risk of heart disease.

21.     Testing has shown that removing emissions controls from a motor vehicle can substantially increase pollutant emissions. *See* 66 Fed. Reg. 5062 (2001). For example, tests conducted by EPA have found that deleting a motor vehicle's emissions controls can increase tailpipe $NO_x$ by a factor of approximately 350 times, tailpipe CO by a factor of approximately 130 times, tailpipe NMHC by a factor of approximately 1,100 times, and tailpipe PM by a factor of approximately 40 times.

22.     The Clean Air Act includes a framework that strictly regulates these harmful motor vehicle emissions. Under the Act, original equipment manufacturers ("OEMs" or "manufacturers") must design motor vehicles and motor vehicle engines to conform to established emissions standards for PM, $NO_x$, NMHC, CO, and other pollutants. 42 U.S.C. § 7525(a)(2); *see* 40 C.F.R. §§ 86.007-30(a)(1)(i), 86.1848-01(a)(1).

23.     In order to sell or offer to sell the motor vehicles and motor vehicle engines, manufacturers must apply for and obtain from EPA a certificate of conformity with EPA's emission standards. 42 U.S.C. §§ 7521, 7522(a)(1), 7525. The certificate of conformity application must describe, among other things, the emission-related "elements of design" of the motor vehicle or motor vehicle engine. *See* 40 C.F.R. § 86.094-21(b)(1); *see also* 40 C.F.R. § 86.1844-01(d)-(e).

**B.      Emission-Related Elements of Design in Motor Vehicles and Motor Vehicle Engines**

24.     Manufacturers install a variety of hardware and software elements of design in motor vehicles in order to control emissions of pollutants in compliance with the Clean Air Act and obtain certificates of conformity. An "element of design" is "any control system (*i.e.*, computer software, electronic control system, emission control system, computer logic), and/or control system calibrations, and/or the results of systems interactions, and/or hardware items on a motor vehicle or motor vehicle engine." 40 C.F.R. § 86.1803-01. Elements of design installed to control emissions are hereinafter referred to as "Emission-Related Elements of Design."

25.     One standard Emission-Related Element of Design is known as an "Exhaust Gas Recirculation ('EGR') System." It recirculates a portion of the exhaust gas through the engine's combustion chamber, thereby reducing engine temperature and $NO_x$ emissions.

26.     Other Emission-Related Elements of Design are collectively referred to as "Aftertreatment," and include elements "mounted downstream of the exhaust valve . . . whose design function is to reduce emissions in the engine exhaust before it is exhausted to the environment." 40 C.F.R. § 1068.30. Aftertreatment includes but is not limited to the following:

a.      Diesel Particulate Filters ("DPFs"), which reduce the level of PM pollution contained in engine exhaust gas;

b.      Diesel Oxidation Catalysts ("DOCs"), which reduce CO and NMHC emissions by converting those pollutants into less harmful gases;

c.      Selective Catalytic Reduction ("SCR") Systems, which reduce $NO_x$ emissions by chemically converting exhaust gas that contains $NO_x$ into nitrogen and water through the injection of diesel exhaust fluid ("DEF"); and

d.      $NO_x$ Adsorption Catalysts ("NACs" a/k/a "$NO_x$ traps"), which reduce $NO_x$ emissions by chemically adsorbing $NO_x$ in the exhaust gas.

27.     Emission-Related Elements of Design also include software. Software parameters, also known as "calibrations," control, among other things, engine combustion and Aftertreatment performance ("Certified Calibrations"). 40 C.F.R. § 86.1803-01. Certified Calibrations are part of a motor vehicle's overall emissions control strategy that enable the vehicle to comply with emissions standards. Certified Calibrations that must be identified in the certificate of conformity application include "fuel pump flow rate, . . . fuel pressure, . . . EGR exhaust gas flow rate, . . . and basic engine timing." 40 C.F.R. § 86.1844-01(e)(2); *see* 40 C.F.R. § 86.094-21(b)(1) (requiring applications to describe emission control systems); *see also* 40 C.F.R. pt. 85 app. VIII (listing vehicle and engine parameters and specifications); 40 C.F.R. pt. 86 app. VI (listing vehicle and engine components).

28.     Motor vehicles are also equipped with Electronic Control Units ("ECUs"), which are computers that monitor and control vehicle operations, including the operation of the Emission-Related Elements of Design described above.

29.     The Clean Air Act also requires manufacturers to install on-board diagnostics ("OBD") systems on vehicles that monitor Emission-Related Elements of Design for any malfunction or deterioration that may cause the vehicle to exceed certain emission thresholds and

alert the driver to repair the malfunction or deterioration. 42 U.S.C. § 7521(m); 40 C.F.R. §§ 86.007-17, 86.010-18, 86.1806-05. The OBD system is an Emission-Related Element of Design.

30. Manufacturers install the Emission-Related Elements of Design described above in motor vehicles and motor vehicle engines in compliance with Title II of the Clean Air Act and the regulations thereunder. *See, e.g.*, 42 U.S.C. §§ 7521, 7522(a), 7525; 40 C.F.R. §§ 86.007-11, 86.1844-01(d)-(e), 86.004-25(b)(6).

31. When an OBD system detects a malfunction or deterioration of an Emission-Related Element of Design, such as the removal of a DPF system, the OBD system records a diagnostic trouble code that identifies the malfunction or deterioration. 40 C.F.R. § 86.1806-05(e). Depending on the malfunction or deterioration (such as one triggered by the removal of a DPF system), the OBD system may also downgrade vehicle performance.

### C. Manufacturing, Offering to Sell, and Selling Parts or Components that Defeat Emissions Controls Is Prohibited by the Clean Air Act

32. The Clean Air Act prohibits the manufacturing, offering to sell, selling, or installing of aftermarket parts or components that defeat a vehicle's emissions controls. Specifically, Section 203(a)(3)(B) makes it illegal "for any person to manufacture or sell, or offer to sell, or install any part or component intended for use with, or as a part of, any motor vehicle or motor vehicle engine," if "a principal effect" of that part or component is "to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine" to comply with the emissions standards set forth in the Clean Air Act and its regulations, and if "the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use." 42 U.S.C. § 7522(a)(3)(B). It is also a prohibited act for any person to cause any of these acts. 42 U.S.C. § 7522(a).

33.     Despite this prohibition, companies manufacture and sell products designed to change motor vehicles' performance (typically seeking gains in horsepower or fuel economy) by bypassing, defeating, or rendering inoperative OEM-installed Emission-Related Elements of Design (*i.e.*, "aftermarket defeat devices"). Some of these aftermarket defeat devices are physically installed in vehicles (such as "straight pipes" and "blocker plates") to change, remove, or replace emissions controls. Some are software products (also known as "tunes"), which are electronically installed using defeat devices (known as "tuners") that plug into a vehicle's OBD port to reprogram the computer systems.

34.     Multiple aftermarket defeat devices can be installed together to defeat vehicles' emissions controls. For example, a driver may physically remove the DPF system from his or her vehicle and replace it with a straight pipe. Then, with the use a tuner to install software tunes to reprogram the vehicle's computer system, the vehicle will operate notwithstanding the "deletion" of the DPF, which would otherwise trigger a signal in the OBD system. Alternately, a tuner can install tunes that electronically disable emissions controls such as the EGR system without physically altering the vehicle.

### D.     Failing to Provide Information Requested by EPA Regarding Clean Air Act Compliance Is Also Prohibited by the Act

35.     Section 208(a) of the Clean Air Act requires manufacturers and other persons subject to the requirements of Part A of Title II to the Act (which includes the aftermarket defeat device prohibitions) to provide information that EPA may reasonably require to determine whether the person has acted or is acting in compliance with the mobile source provisions of the Act. 42 U.S.C. § 7542(a).

36.     Section 203(a)(2)(A) of the Act makes it a prohibited act to fail to provide information required under Section 208 or to cause the information not to be provided. 42 U.S.C. §§ 7522(a), 7522(a)(2)(A).

**E.     Violations Are Subject to Injunctive Relief and Civil Penalties**

37.     The United States may seek injunctive relief and civil penalties for these violations of the Act. 42 U.S.C. §§ 7523, 7524.

38.     Violations of Section 203(a)(3)( B) are subject to a civil penalty of up to $4,876 for each violation occurring after November 2, 2015 (the time frame relevant here), 42 U.S.C. § 7524(a), as amended by the Debt Collection Improvement Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321, codified as amended at 40 C.F.R. Part 19. Each part or component manufactured, sold, offered for sale, or installed in violation of Section 203(a)(3)(B) is a separate violation. 42 U.S.C. § 7524(a).

39.     Violations of Section 203(a)(2)(A) are subject to civil penalties of up to $48,762 per day of violation occurring after November 2, 2015. 42 U.S.C. § 7524(a), as amended by the Debt Collection Improvement Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321, codified as amended at 40 C.F.R. Part 19.

**DEFENDANTS MANUFACTURE, OFFER TO SELL, AND SELL THE EZ LYNK SYSTEM IN VIOLATION OF THE CLEAN AIR ACT**

40.     Defendants have violated the Clean Air Act by manufacturing, offering to sell, selling, and causing the sale of the EZ Lynk System, a device designed to remove, bypass, defeat, or render inoperative emissions controls installed in vehicles to meet the Act's emission standards.

A. **The EZ Lynk System Is Designed, Manufactured, Offered for Sale, and Sold to Enable Drivers to Delete Emissions Controls**

41.     The EZ Lynk System is Defendants' flagship product, which they have publicly marketed for sale in the United States, including in this District, since at least June 9, 2016. Defendants claim that it is compatible with over 180 different makes and models of motor vehicles, including motor vehicles manufactured by GMC, Ford, and Chrysler.

i. **Defendants Designed the EZ Lynk System to Reprogram Emissions Controls**

42.     Before they created EZ Lynk and began selling the EZ Lynk System in 2016, Defendants Gintz and Wood already had significant involvement in the aftermarket defeat device industry.

43.     Since at least 2010, Defendant Gintz has owned a Louisiana-based company, Calvin's Auto Repair, LLC, that sells and installs aftermarket devices that disable emissions controls. Indeed, for years before the launch of EZ Lynk, Gintz himself personally installed defeat devices on his customers' trucks.

44.     From approximately 2010 until approximately 2014, Defendant Wood provided engineering services to H&S Performance, LLC ("H&S"), by providing engineering support for an H&S aftermarket tuner. In 2015, EPA found that the H&S tuner for which Defendant Wood provided engineering support was a device that defeated vehicles' emissions controls in violation of the Clean Air Act. H&S agreed to pay EPA a fine of $1,000,000 for H&S's manufacture and sale of that device and two other devices.

45.     In 2016, Defendants Gintz and Wood designed the EZ Lynk System, a device similar to the H&S tuner found by EPA to have violated the Act, and formed EZ Lynk as an offshore company to manufacture and sell it. Also in 2016, Defendants Gintz and Wood filed a

patent application for the first-generation EZ Lynk System. U.S. Patent No. 10,037,633, entitled

"System and method for real time wireless ECU monitoring and reprogramming," contains a

detailed description of the device, including its ability to reprogram a vehicle's ECU to alter its

emission controls. Defendants Gintz and Wood are listed as inventors on the patent, and EZ

Lynk is listed as the "assignee."

46.     The EZ Lynk System patent application expressly provides that the invention is

capable of reprogramming "settings used to tune the engine for efficiency or performance,

including settings for ignition timing advance, spark timing, fuel injection, electronic throttle

control, poppet valve timing, [and] boost control." Changes to any of these manufacturer settings

can impact engine emissions controls. In addition, the patent application contains two figures

demonstrating that the device is capable of modifying the "Pilot Injection" and the "Smoke

Limitation," both of which can also impact emissions controls. These various settings, including

the Pilot Injection and the Smoke Limitation, are all Emission-Related Elements of Design.

### ii.     The EZ Lynk System Is Manufactured to Reprogram Vehicles' Computer Systems to Defeat Emissions Controls

47.     Defendants Gintz, Wood, and EZ Lynk manufactured the EZ Lynk System as a

device to defeat vehicles' emissions controls. The physical component of the system is the EZ

Lynk Auto Agent, an electronic device that plugs into a vehicle's OBD port to access, override,

or reprogram the vehicle's computer system, including aspects of the ECU and OBD system, as

well as various other Emission-Related Elements of Design. The EZ Lynk System is designed to

be compatible with many specific motor vehicles, including Ford, Chevrolet, Jeep, GMC,

Cadillac, Buick, and Nissan models.

48.     The EZ Lynk System also includes a smartphone application called the "Auto

Agent App," which connects the EZ Lynk Auto Agent to EZ Lynk's Internet-based service

called the "EZ Lynk Cloud." Once the Auto Agent is connected to the EZ Lynk Cloud through the Auto Agent App, drivers are able to send and receive data and software relating to their vehicles' computer systems. As advertised by EZ Lynk in its online description of the Auto Agent App, the EZ Lynk System allows users to "[s]hare, record, and reprogram your vehicle easily from your Smartphone."

49.     The EZ Lynk System enables drivers to acquire and install calibration software called "tunes" to reprogram their vehicles. Many of the available tunes are so-called "delete tunes," which are capable of defeating Emission-Related Elements of Design. For example, delete tunes may modify or replace Certified Stock Calibrations relating to: Aftertreatment systems; EGR systems; engine combustion, performance, and operation (*e.g.*, air-fuel ratio, fuel injection timing, fuel quantity, fuel injection pressure, and fuel injection pulse width and temperature); or OBD functions (to prevent the generation of diagnostic trouble codes, prevent the Malfunction Indicator Light from illuminating, or prevent the OBD from downgrading vehicle performance). Indeed, a single delete tune can modify or replace multiple Certified Stock Calibrations in a vehicle.

50.     Third-party companies and individuals create delete tunes specifically for use with the EZ Lynk System. EZ Lynk refers to companies and individuals who write tunes for the EZ Lynk System as "technicians." The EZ Lynk System is essential to drivers' acquisition and installation of EZ Lynk delete tunes; delete tunes alone cannot defeat vehicles' emissions controls.

51.     The EZ Lynk Cloud enables drivers to acquire delete tunes. Through the EZ Lynk Cloud, EZ Lynk provide accounts for drivers and technicians. Drivers access their accounts through the Auto Agent App and technicians access their accounts online at cloud.ezlynk.com.

14

EZ Lynk also provides technicians with storage space on the EZ Lynk Cloud where technicians can store delete tunes that will later be transferred to drivers. Drivers are able to search for and connect with particular technicians on the EZ Lynk Cloud. Once a driver connects with a technician, the technician is able to transfer tunes to the driver through the EZ Lynk Cloud.

52.     Once a delete tune is acquired on the EZ Lynk Cloud, the delete tune is installed using the EZ Lynk Auto Agent. Specifically, the Auto Agent App on a driver's smartphone is used to transfer the delete tune from the EZ Lynk Cloud to the Auto Agent. The EZ Lynk Auto Agent is used to install the delete tune on the vehicle's computer system.

53.     Below is a frame from a video posted on YouTube showing a technician's selection of "No Em[issions]" delete tunes available on the EZ Lynk Cloud through the Auto Agent App.



54.     And below are frames showing use of the EZ Lynk System to select, transfer, and install the "PPEI Ram 13-17 6.7L PK 68RFE. No Em[issions] SOTF. V2.5" delete tune to defeat a vehicle's emissions controls.







55.     Consistent with this, the EZ Lynk System is widely advertised as a "revolutionary" and "user-friendly" "tuning system" capable of "accessing deeper into the vehicle's computers" to "enhance [the vehicle's] overall performance and fuel economy."

56.     Since the EZ Lynk System launched in mid-2016, Defendants Gintz, Wood, EZ Lynk, and Prestige have manufactured and/or sold at least tens of thousands of EZ Lynk Systems. Upon information and belief, a large proportion of these EZ Lynk Systems were ultimately purchased by drivers in the United States, including in this District.

### a.     Defendants Enable the Creation of Effective Delete Tunes and Profit from the Sale of Delete Tunes

57.     Defendants Gintz, Wood, and EZ Lynk regularly collaborate with technicians to ensure that delete tunes capable of effectively disabling emissions controls are readily available to drivers using the EZ Lynk System. For example, technician GDP Tuning noted on its Facebook page that it had collaborated with EZ Lynk during the development of the EZ Lynk System, stating that it was "fortunate" to be able "to work with the guys at EZ Lynk during the development of this state of the art software and ha[s] been amazed at what the EZ Lynk platform is capable of."

58.     Defendants Gintz, Wood, and EZ Lynk similarly previewed the EZ Lynk System for Power Performance Enterprises, Inc. ("PPEI"), another creator of delete tunes in the aftermarket defeat device industry. Indeed, PPEI was involved in the early stages of testing the EZ Lynk System approximately two years before the system's launch in 2016. And before Defendants launched an updated version of the Auto Agent device in 2018, Defendants again previewed the updated system for PPEI, whose owner publicly discussed the updated system's advantages before it was available to the public.

59.     Defendants Gintz, Wood, and EZ Lynk also provide technicians with a free, cloud-based software program called the EZ Lynk ECU Profile Editor that enables them to create tunes for use with the EZ Lynk System, including tunes capable of deleting a vehicle's Emission-Related Elements of Design, such as fuel injection timing.

60.     In addition to enabling the creation of delete tunes for the EZ Lynk System, Defendants Gintz, Wood, and EZ Lynk profit from it. They require technicians across the United States, including in this District, to purchase "tokens" in order to transfer delete tunes to drivers. An EZ Lynk "token" is a unit of time during which data is exchanged between a driver and a technician via the EZ Lynk Cloud. According to EZ Lynk's website, technicians can purchase tokens by emailing a request to tokens@ezlynk.com. Through the sale of tokens, EZ Lynk charges technicians for using the EZ Lynk System to transfer delete tunes, thereby profiting from the sale of delete tunes.

> **iii.    The EZ Lynk System Is Widely Marketed and Bundled with Delete Tunes as the Tuner of Choice for Drivers Looking to Defeat Emissions Controls**

61.     Online retailers capable of shipping the EZ Lynk System to drivers throughout the United States, including in this District, regularly offer the EZ Lynk System for sale bundled together with delete tunes.

62.     In fact, Defendant Gintz's Louisiana-based automotive company, Calvin's Auto Repair, operates a website called Calvin's Online, which sells the EZ Lynk System bundled with various delete tunes. For example, as of January 2020, Calvin's Online offered the EZ Lynk System bundled with PPEI tuning for $1,349, which included tunes to delete emissions controls and add power to the engine once the emissions controls are disabled.

63.     In addition, the "EZ Lynk DPF Delete Tuning Ford Powerstroke Diesel" package offered for sale online by Diesel Truck Products for $1,499 includes "DPF, SCR, DOC, CAT, EGR & DEF delete tuning." Similarly, HD Diesel Supply's online store offers a "Duramax EZ Lynk AutoAgent 2 DPF/EGR Delete" package, priced at $1,599, which includes a "complete DPF/EGR Delete tuning package for your 2011-2016 LML Duramax Truck," and a "premium package" was offered for sale by online seller Dale's Super Store in December 2017 for $1,525 included an EZ Lynk System that "[d]eletes the DPF, CAT, EGR, & DEF." The EZ Lynk System is also offered for sale separately (without tunes) by online retailers such as Amazon, eBay, and Walmart, for delivery throughout the United States, including this District.

**B.     Defendants Use the Internet to Encourage and Facilitate Defeating Emissions Controls with the EZ Lynk System**

64.     EZ Lynk maintains the EZ Lynk Forum, a Facebook group that is a resource for drivers seeking "information and support for everything related to the EZ Lynk AutoAgent." The EZ Lynk Forum provides contact information for "immediate assistance" by the "EZ LYNK Technical Support Team," and sets forth EZ Lynk's hours of operation. Since its creation, the EZ Lynk Forum has been administered by EZ Lynk and PPEI representatives, including PPEI's owner. The Facebook group has over 12,000 members from across the United States, including from this District.

65.     The EZ Lynk Forum was initially a public Facebook group that could be accessed by anyone. However, after the Government began its investigation into EZ Lynk's violations of the Clean Air Act, the forum was converted into a "Private Group" (meaning that "[o]nly members can see who's in the group and what they post") that is "Hidden" (meaning that "[o]nly members can find this group").

66. Hundreds of posts on the EZ Lynk Forum refer to the use of the EZ Lynk System to "delete" emissions controls in vehicles across the United States. EZ Lynk's own representatives have explicitly approved of the use of the EZ Lynk System to delete emissions controls on many of these posts. For example (emphasis added):

- A driver posted, "Finally made the jump and *deleted my 14 Ram 2500*: Holy hell [] this thing is awesome! The EZ lynk worked flawlessly, albeit I was a nervous wreck during the tune flash," adding that "*the guys at EZ lynk are doing great work!*" The driver tagged an EZ Lynk representative, who later "loved" the post.

- Another driver posted to the EZ Lynk Forum, "Had a few small issues with my ez lynk install. Got in touch with the tech support. All issues resolved. Couldn't be happier with my ez lynk. *Truck has shown huge improvement with the deletes and new tunes*." Again, an EZ Lynk representative "loved" the post.

- A driver wrote that the driver's "*ez Lynk/delete set up* will arrive on my door step next week," noting that the driver had questions about setting it up. Another poster responded, "If you have issues ezlynk customer service is real good," and an EZ Lynk representative "liked" the post.

67. In addition to maintaining the forum and reading and "loving" posts describing drivers using the EZ Lynk System to delete emissions controls, EZ Lynk technical support representatives use the EZ Lynk Forum to provide technical assistance to drivers to support deletion of emissions controls. For example (emphasis added):

- Another driver posted to the EZ Lynk Forum, "*Installed ez Lynk* on my 14 ram 3500 *fully deleted* the other day [and] as soon as it loaded" certain dashboard Malfunction Indicator Lights illuminated. The driver asked if anyone else had experienced the same problem. EZ Lynk's Technical Support Representative provided several long and detailed responses about how to fix the problem, and the driver wrote "*[p]roblems fixed with the help of EZ Lynk's Technical Support Representative* and hpp tunes."

- A driver posted on Facebook in the EZ Lynk Forum, "*[J]ust installed an ez lynk from ppei and egr delete* . . . [but] I have no ecu profiles from ppei? What's going on here?" In response, EZ Lynk's Technical Support Representative and PPEI's owner posted questions and advice to troubleshoot the issue with the delete process. Ultimately, PPEI's owner fixed the driver's issue remotely through the EZ Lynk Cloud, and the driver responded by posting, "Thank you so much for the awesome service! I love the way the truck is *now being deleted*!"

20

- A driver posted, "My ezlynk has worked great since the day I had it installed! *Even going from stock to deleted I had ZERO issues!* I just wanted everyone to know this is a great system and my pickup runs great, zero smoke and my mpg's went up about 6mpg. SHIT!! I just can't believe how well it connects and never gives me issues! Even when I had a small situation I CALLED THEM and BAM!! Problem solved! Good day." In response, an EZ Lynk representative "loved" this post.

68.    Posts in the EZ Lynk Forum monitored by EZ Lynk representatives also make clear that drivers are using the EZ Lynk System to delete emissions controls for day-to-day driving on public roads and highways. For example:

- A driver wrote about deleting a 2014 Ram with the EZ Lynk System and PPEI tunes and sought recommendations for the best tunes for "daily driving" and "towing." Several posters responded with tune recommendations.

- A driver posted about installing "the ez lynk egr delete" and asked for advice on which tunes to use to make the truck quieter as it was "just a little loud for me at 55 years old. Lol." In responses, several other users suggested the best tunes for "commuting" and "daily driving."

- A driver posted a question to the EZ Lynk Forum: "Is it safe to run the 0-200hp LBF tune on the lml [Duramax engine] all the time?" Several individuals responded affirmatively, including one who wrote, "Ran it since I deleted it. Road trips, commuting, pulling trailers. Best fuel Econ I've ever gotten too."

69.    EZ Lynk's representatives have also provided forum members with the EZ Lynk Tech Support phone number and e-mail address to further assist members experiencing problems with their EZ Lynk System delete tunes.

70.    EZ Lynk also maintains the EZLynk.com website, which offers technical support to drivers using the EZ Lynk System in the United States, including in this District, by telephone, e-mail, or instant messaging. At least some of that customer support is provided on behalf of EZ Lynk by a Utah-based company called TechIT, LLC, which is owned by Defendant Wood.

C.     **The EZ Lynk System Is Used Across the United States to Defeat Vehicles'
       Emissions Controls**

71.     Since 2016, the EZ Lynk System has enabled drivers throughout the United

States, including in this District, to defeat emissions controls in their vehicles. Hundreds of posts,

statements, pictures, and/or videos on online message boards, Youtube.com, and social media

sites show the use of the EZ Lynk System to defeat vehicles' emissions controls. For example

(emphasis added):

- A driver with the username 2fast4thelaw posted a lengthy guide on "*How to
  Delete and Tune*" a Nissan Titan XD truck using "EZLynk w/HPP tunes" on
  titanxdforum.com. 2fast4thelaw described each step of the process of disabling
  the emissions controls on his truck. As a result of the "delete," the "increase in
  power is very apparent and like everyone says and it's true, it's a different truck."

- Another driver began a thread on reddit.com with the post: "Warranty is done! *Let
  the deletes begin!*" (Disabling emissions controls with tuners will typically void a
  vehicle's warranty.) In response, several posters recommended the EZ Lynk
  System, including a poster who noted that the EZ Lynk System gives tune
  creators "way more control," explaining that the tunes technician "just pushes"
  the tunes "to the EZ Lynk and you install which takes 5 minutes."

- Another driver posted a thread entitled "Overkill street truck" on
  cumminsforum.com in which the driver acknowledged performing a "*full delete
  with an ezlynk* with hpp tunes," adding that the driver was "looking to build a big
  power add [sic] a turbo truck."

- Another driver posted to dieselplace.com about deleting emissions controls to
  avoid the cost of maintaining them: "Since I didn't want to spend near $3000 for a
  [new] DPF and DEF tank I decided now was the time to do a *delete on the truck*."
  The driver used "an EZ Lynk tuner" to install the "*No Emissions* 100
  [horsepower] V2.4 tune" from PPEI. The driver reported that the "[t]une loaded
  just fine and everything works as it should."

- A driver wrote a long post on powerstroke.org about deciding to "*delete (Exhaust,
  EGR, Intake, and tuner)*" for "increased fuel economy, more power." The driver
  decided to use "a PPEI EZ Lynk tuner" noting that the EZ Lynk System "has
  really good reviews and so do [PPEI's] tunes so hopefully, it's worth the extra
  money," adding that the driver was "a little worried about engine longevity *and
  the government*, but it should be fine."

- A driver posted on duramaxforum.com the below screenshot of the EZ Lynk Cloud showing various "No Emissions" delete tunes to choose from, noting that the EZ Lynk System allows drivers to "shift on the fly" among different tunes.



72.     One Facebook group, "LML Duramax Brethren," which includes EZ Lynk's lead warehouse technician among its 38,000 members, changed its name to "LML Duramax Brethren – *Nothin to See Here EPA Move Along*" on September 17, 2019. (Emphasis added.) As with the EZ Lynk Forum and other online automotive enthusiast websites, the LML Duramax Brethren – Nothin to See Here EPA Move Along Facebook group contains numerous posts regarding the disabling of emissions controls using the EZ Lynk System.

73.     The EZ Lynk System can foreseeably affect emission controls throughout the life of a vehicle, *i.e.*, even after it is sold to a new driver. In addition to online posts regarding the process and results of "deleting" emissions controls from vehicles, marketplace websites such as autotrader.com and craigslist.org contain posts *selling* vehicles that have been "deleted" using the EZ Lynk System, demonstrating that the emissions impacts of the EZ Lynk System can continue well beyond the original driver who used EZ Lynk's System.

74.     During a single three-month period from October 2017 through December 2017, the United States found more than 50 advertisements for vehicles with emissions controls that had been "deleted" using the EZ Lynk System, in more than twenty states: Alabama, California, Colorado, Delaware, Georgia, Illinois, Kentucky, Michigan, Missouri, Nebraska, New

23

Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Virginia, Washington, and Wisconsin. For example (emphasis added):

- On November 4, 2017, a 2016 Chevrolet Silverado for sale on the craigslist.org forum for the Rochester, New York area was described as "*fully deleted and tuned with the EZ Lynk* supported by GDP tunes."

- On November 12, 2017, an advertisement for sale of a 2013 Ford F-250 for sale on the Oklahoma City, Oklahoma craigslist.org forum noted: "*everything is deleted, tuned with Ez Lynk* and has a 4 inch exhaust. This truck is bad to the bone."

- On December 5, 2017, a 2016 Ram 2500 Laramie that had been "*[d]eleted with PPEI ez lynk* 4 stage tuner" in Griggsville, Illinois for was advertised for sale on autotrader.com.

75.     And on May 29, 2020, a 2017 Ram 2500 Laramie pickup truck with "5 inch flo pro straight pipe (fully deleted), *EGR delete, EzLynk Ppei tuner with TCM tuned*" was listed for sale in Montebello, New York. (Emphasis added.)

76.     A "tricked out" 2018 Ford F-250 King Ranch truck was offered for sale for $120,000 on Instagram, as reported by music news website countryfancast.com. The description of the truck in the online article noted that it had 12,800 miles on it and was "*fully tuned and deleted*" using "Ppei tunes and ez Lynk." (Emphasis added.)

77.     YouTube.com contains many videos depicting the use of the EZ Lynk System to delete emissions as well as footage of deleted vehicles driven on public roads. For example (emphasis added):

- A driver posted a video of his truck on YouTube entitled "*Tuned & deleted* 2012 F250 6.7L Power Stroke *EZLynk* Chaos Flo-Pro No Limit VooDoo Diesel." In the video, the driver discusses having tampered with his truck's EGR and installing tunes using the EZ Lynk System.

- A driver posted a video entitled "2017 Ford F250 22x12 American Force wheels *DPF Delete Ez Lynk*" of his truck driving on dirt and paved roads, and blowing black smoke. In the comments section of the video, one user wrote "I want to

delete mine [but] im to[o] scared to," and the video poster responded that "it's worth it."

- A driver posted a video entitled "Nissan Titan XD *Fully Deleted EZ Lynk*/5" Flo Pro Hardway Performance Tuning" in which someone drives a truck down a city street that emits a large cloud of black smoke onto the car directly behind the truck as it accelerates.

78.     The EZ Lynk System is a product widely used to defeat mandatory emissions controls across the United States, including in this District. Defendants have violated Section 203(a)(3)(B) of the Clean Air Act by manufacturing, offering for sale, selling, and causing the sale of the EZ Lynk System with knowledge of that use.

## EZ LYNK, GINTZ, AND WOOD FAILED TO PROVIDE REQUESTED INFORMATION TO EPA IN VIOLATION OF THE CLEAN AIR ACT

79.     Pursuant to Section 208 of the Act, manufacturers and other persons subject to the motor vehicle emissions provisions of the Clean Air Act (including those provisions at issue here) must "provide information [EPA] may reasonably require to determine whether the manufacturer or other person has acted or is acting in compliance with [these provisions] . . . and regulations thereunder, or to otherwise carry out [these provisions]." 42 U.S.C. § 7542(a).

80.     As part of its investigation into whether Defendants' manufacture and sale of the EZ Lynk System violates Section 203 of the Clean Air Act, on October 17, 2018, EPA issued a request for information pursuant to Section 208 of the Act to EZ Lynk, and to Gintz and Wood as corporate officers of EZ Lynk who had the power to cause EZ Lynk to respond or prevent it from doing so (the "208 Request"). The production of information responsive to this request was due by February 19, 2019.

81.     The 208 Request required EZ Lynk, Gintz, and Wood to provide information about its business structure and employees; the manufacture, importation, sale, and distribution of the Auto Agent in the United States; the Auto Agent's pricing; the EZ Lynk Cloud and its

users; tunes compatible with the EZ Lynk System and whether they are capable of "deleting" emissions controls; customer support for the EZ Lynk System; the marketing and promotion of the EZ Lynk System; and other information related to EZ Lynk's compliance with the Clean Air Act.

82. In response to most of EPA's queries, EZ Lynk provided either no information, incomplete information, or vague responses that required clarification. Accordingly, EPA requested that EZ Lynk supplement many of its responses to the items in the 208 Request.

83. While EZ Lynk provided a minimal supplement to its responses, its supplement failed to provide any additional information for many key requests, and provided incomplete responses to a number of other requests.

84. Despite EPA's numerous requests, including written requests made by the United States Attorney's Office for the Southern District of New York ("USAO-SDNY") on behalf of EPA, as well as an in-person request for supplemental information made by EPA during a meeting held at the USAO-SDNY, EZ Lynk has refused to provide information about the EZ Lynk System that is relevant to EPA's Clean Air Act investigation. For example, EZ Lynk has refused to produce business information that is directly relevant to its knowledge that the EZ Lynk System is being used to defeat emissions controls on motor vehicles driven in the United States, such as information about EZ Lynk's business relationships with EZ Lynk System wholesalers, distributors, or dealers; EZ Lynk's business relationships with the technicians who write and sell tunes for use with the EZ Lynk System; information about EZ Lynk's sales of tokens to technicians to enable them to transmit delete tunes to drivers (such as the quantity of tokens sold or to whom); the methods by which EZ Lynk provides technical support to drivers

(including about how to use the EZ Lynk System to defeat emissions controls); and how EZ Lynk has marketed or promoted the Auto Agent to U.S. drivers (such as for what purposes).

85.     EZ Lynk has refused to disclose the quantity of EZ Lynk Systems manufactured, sold, or imported into the United States, information over which EZ Lynk has claimed no privilege and which the Government requires to determine the total number of Clean Air Act violations committed by Defendants.

86.     EZ Lynk has also refused to disclose the addresses (or even just the city and state) of drivers who have purchased or registered to use the EZ Lynk System.

87.     By letter to USAO-SDNY, EZ Lynk refused to respond to these requests principally on the basis that EPA's requests are "premature prior to any prima facie showing that EZ Lynk has committed a violation of the Clean Air Act." That is not the law; EZ Lynk, Gintz, and Wood are required to produce such information that EPA "may reasonably require" under the statute, without any threshold "prima facie" showing.

88.     EZ Lynk has also claimed that "Cayman Islands privacy law" may prohibit the disclosure of some of the information requested, but despite repeated requests has not substantiated this claim.

89.     EZ Lynk's, Gintz's, and Wood's efforts to stymie EPA's investigation by refusing to produce the requested information violates the Clean Air Act under Section 203(a)(2)(A) of the Act, 42 U.S.C. § 7522(a)(2)(A).

**FIRST CLAIM FOR RELIEF**
*Violation of Section 203(a)(3)(B) of the Clean Air Act*
*(Against All Defendants)*

90.     The United States re-alleges paragraphs 1 through 89 above as if fully set forth herein.

91.     Defendants have manufactured and sold at least tens of thousands of EZ Lynk Systems, many of which were purchased by drivers in the United States, including in this District, who used the EZ Lynk System to bypass, defeat, or render inoperative one or more Emission-Related Elements of Design.

92.     The EZ Lynk System is intended for use with, or as part of, motor vehicles or motor vehicle engines.

93.     The EZ Lynk System reprograms motor vehicle or motor vehicle engine calibration software designed and installed by motor vehicle or motor vehicle engine manufacturers to comply with applicable standards under the Clean Air Act by installing custom calibration software called "tunes."

94.     Many of the tunes used with the EZ Lynk System bypass, defeat, or render inoperative the software designed and installed to comply with applicable standards under the Clean Air Act for the motor vehicle or motor vehicle engine, which software is an Emission Related Element of Design.

95.     A principal effect of the EZ Lynk System is to disable, defeat, or render inoperative Emission-Related Elements of Design installed on or in motor vehicles or motor vehicle engines in compliance with Title II of the Act, or cause the foregoing.

96.     Defendants knew or should have known that the EZ Lynk System was being manufactured, offered for sale, sold, and installed for such use or put to such use.

97.     Each time Defendants manufactured, offered for sale, sold, or caused to be sold an EZ Lynk System and each time Defendants caused an EZ Lynk System to be installed is a separate violation of Section 203(a)(3)(B) of the Clean Air Act, 42 U.S.C. § 7522(a)(3)(B).

98.     Defendants' conduct is ongoing and will continue absent an injunction.

99.     Pursuant to Section 204(a) of the Clean Air Act, the Court should issue an injunction barring Defendants from selling the EZ Lynk System. 42 U.S.C. § 7523(a).

100.    Pursuant to Section 205(a) of the Act, the Court should award a civil penalty of up to $4,876 for each violation of Section 203(a)(3) occurring after November 2, 2015. 42 U.S.C. § 7524(a), as amended by the Debt Collection Improvement Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321, codified as amended at 40 C.F.R. Part 19.

<u>SECOND CLAIM FOR RELIEF</u>
*Violation of Sections 203(a)(2)(A) and 208(a)*
*(Against Defendants EZ Lynk, Gintz, and Wood)*

101.    The United States re-alleges paragraphs 1 through 100 above as if fully set forth herein.

102.    EZ Lynk is a person who EPA reasonably believes may have information regarding the EZ Lynk System necessary for the information-gathering purposes set forth in Section 208(a) of the Clean Air Act, 42 U.S.C. § 7542(a).

103.    EPA issued the 208 Request to EZ Lynk, and to Gintz and Wood as EZ Lynk corporate officers, pursuant to its statutory authority under Section 208 of the Clean Air Act, 42 U.S.C. § 7542(a).

104.    The 208 Request seeks information regarding EZ Lynk's business structure and employees; the manufacture, importation, sale, and distribution of the Auto Agent in the United States; the Auto Agent's pricing; the EZ Lynk Cloud and its users; tunes compatible with the EZ

Lynk System and whether they are capable of "deleting" emissions controls; customer support for the EZ Lynk System; the marketing and promotion of the EZ Lynk System; and other information relevant to EZ Lynk's compliance with the Clean Air Act.

105.    The 208 Request was issued for the lawful purpose of carrying out EPA's responsibilities for enforcing the Clean Air Act, including its authority under Title II, Part A of the Act – Motor Vehicle Emission and Fuel Standards, Sections 202-219, 42 U.S.C. §§ 7521-7554, to determine whether a person is acting or has acted in compliance with this Part and otherwise carry out the provision of the Part.

106.    The 208 Request seeks relevant and reasonable information for such lawful purposes under the Act.

107.    EZ Lynk's response to the 208 Request was due February 19, 2019.

108.    On and since February 19, 2019, EZ Lynk has failed to provide complete information in response to the 208 Request.

109.    EZ Lynk, Gintz, and Wood failed to comply with Section 208(a) of the Clean Air Act. 42 U.S.C. § 7542(a).

110.    EZ Lynk refused to provide EPA, in whole or part, the requested information and documents about the EZ Lynk System; Gintz and Wood, as individuals controlling EZ Lynk's responses, caused EZ Lynk's noncompliance with Section 208(a) of the Clean Air Act.

111.    Defendants' conduct is ongoing and will continue absent an injunction.

112.    Pursuant to Section 204(a) of the Clean Air Act, the Court should issue an injunction requiring EZ Lynk to provide EPA the requested information and documents, and requiring Gintz and Wood to cause EZ Lynk to do so. 42 U.S.C. § 7523(a).

113.    Pursuant to Section 205(a) of the Act, the Court should award a civil penalty of up

to up to $48,762 per day of violation since February 19, 2019, 42 U.S.C. § 7524(a), as amended

by the Debt Collection Improvement Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321, codified

as amended at 40 C.F.R. Part 19.

## RELIEF REQUESTED

WHEREFORE, the United States respectfully requests that the Court grant the following

relief:

   a.    Permanently enjoin Defendants from manufacturing, selling, offering to sell,
         causing the sale, or installing the EZ Lynk System and any similar motor vehicle
         parts or components intended for use with a motor vehicle or motor vehicle
         engine where a principal effect of such part or component is to bypass, defeat, or
         render inoperative any device or element of design installed on or in a motor
         vehicle or motor vehicle engine in compliance with Title II of the Clean Air Act;

   b.    Order EZ Lynk to provide EPA the documents and information requested
         pursuant to Section 208 and not yet provided, and order Gintz and Wood to cause
         EZ Lynk to do so;

   c.    Assess a civil penalty of up to $4,876 for each violation of Section 203(a)(3) of
         the Clean Air Act;

   d.    Assess a civil penalty of up to $48,762 per day of violation of Section
         203(a)(2)(A) of the Clean Air Act, 42 U.S.C. § 7522(a)(2)(A);

   e.    Order Defendants to take other appropriate action to remedy, mitigate, and offset
         the harm caused by their alleged Clean Air Act violations;

   f.    Award the United States its costs and disbursements in this action; and

   g.    Grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
     March 8, 2021

                         Respectfully Submitted,

                         AUDREY STRAUSS
                         United States Attorney for the
                         Southern District of New York
                         *Attorney for the United States*

By:   Mónica P. Folch                    
                         MÓNICA P. FOLCH
                         JENNIFER JUDE
                         Assistant United States Attorneys
                         86 Chambers Street, 3rd floor
                         New York, New York 10007
                         Telephone: (212) 637-6559/2663

Of Counsel:

EDWARD KULCHINSKY
Attorney-Advisor
Air Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave, NW
Washington, DC  20460