UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED:  3/28/2024

UNITED STATES OF AMERICA,

                              Plaintiff,

  -v-

EZ LYNK SEZC, BRADLEY GINTZ,
PRESTIGE WORLDWIDE SEZC, and
THOMAS WOOD,

                              Defendants.

No. 21-cv-1986 (MKV)

OPINION & ORDER
GRANTING IN PART
AND DENYING IN PART
MOTION TO DISMISS
AND DENYING
SUMMARY JUDGMENT

MARY KAY VYSKOCIL, District Judge:

This case is chiefly about whether Defendants can be held liable under Section 203 of the Clean Air Act, 42 U.S.C. § 7522(a)(3)(B), which prohibits the manufacture and sale of devices used to defeat vehicle emissions controls.  The government contends that the "EZ Lynk System," which is a tool for reprogramming the computer system in a car, is a "defeat device" because it is commonly used to acquire and install software that defeats emissions controls.  Defendants argue that the EZ Lynk System is a neutral tool that, by itself, has no effect on emissions controls and that Defendants cannot be held liable for merely hosting and distributing third-party software.  In particular, Defendants argue that Section 230 of the Communications Decency Act of 1996 immunizes Defendants from any liability under the Clean Air Act.

Best known in the public discourse as a shield for social media companies, Section 230 immunity might seem misplaced in a case against alleged polluters.  But the government's own allegations make clear that, by its plain terms, Section 230 immunity applies in this case.  It is not the role of this Court to rewrite a statute, and refuse to apply precedent, to avoid an outcome that Congress might not have foreseen in 1996 and the executive dislikes today.

The government also contends that three of the defendants violated Section 208 of the

Clean Air Act when they refused to provide some of the information the Environmental Protection Agency ("EPA") demanded. *See* 42 U.S.C. § 7542(a). Defendants again invoke Section 230, but immunity from liability is not immunity from investigation.

Before the Court is Defendants' motion to dismiss this entire case and the government's cross-motion for summary judgment on its Section 208 claim against Defendants EZ Lynk SEZC ("EZ Lynk"), Bradley Gintz, and Thomas Wood. As explained below, the government states the elements of a *prima facie* claim under Section 203 of the Clean Air Act. However, it is clear on the face of the Complaint that Section 230 of the Communications Decency Act provides immunity. With respect to Section 208, the government states a claim but is not entitled to summary judgment. Accordingly, for the reasons set forth below, Defendants' motion to dismiss is GRANTED in part and DENIED in part, and the government's motion for partial summary judgment is DENIED.

## I.     BACKGROUND[1]

### A. Relevant Statutes

#### 1. The Clean Air Act

The Clean Air Act requires the original manufacturers of motor vehicles to include various "hardware and software" emissions controls ("Emission-Related Elements of Design"). Cmpl. ¶¶ 22, 24–27. Modern cars are run in significant part by computers, known as "Electronic Control Units ('ECUs')." Cmpl. ¶ 28. ECUs "monitor and control vehicle operations, including the operation of the Emission-Related Elements of Design." Cmpl. ¶ 28.

---

[1] Like the Complaint and both parties' briefs, this Opinion begins with the "regulatory background" to this action [ECF No. 1 (the "Complaint" or "Cmpl.") at 5; ECF No. 44 ("Def. Mem.") at 5–6; ECF No. 47 ("Gov. Mem.") at 4]. For purposes of Defendants' motion to dismiss, the facts are taken from the Complaint and are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). With respect to the dispute over whether EZ Lynk, Gintz, and Wood violated Section 208, the Court relies on the evidence cited in the parties' Local Civil Rule 56.1 statements [ECF Nos. 48 ("Gov. 56.1"), 49, 50 ("Kulschinsky Decl."), 56 ("Def. Counter 56.1")].

"The Clean Air Act also requires manufacturers to install on-board diagnostics ('OBD') systems . . . that monitor . . . for any malfunction or deterioration that may cause the vehicle to exceed certain emission thresholds."  Cmpl. ¶ 29.  The OBD system "records a diagnostic trouble code" and "alert[s] the driver to repair the malfunction or deterioration."  Cmpl. ¶¶ 29, 31.  It "may also downgrade vehicle performance."  Cmpl. ¶ 31.

Section 203 of the Clean Air Act makes it illegal to manufacture, sell, or install a "defeat device" that enables a car to evade emissions controls.[2]  Specifically, it is illegal "for any person to manufacture or sell, or offer to sell, or install, any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use."  42 U.S.C. § 7522(a)(3)(B).

It is not, however, *per se* illegal to tinker with the manufacturer's design of your car, or to make, sell, or install a device that enables people to tinker with their cars.[3]  The implementing regulations of the Clean Air Act recognize a role for "aftermarket" tools and technicians.  *See* 40 C.F.R. § 86.010-38; 40 C.F.R. § 86.1808-01.

Also pertinent to this case, Section 208 of the Clean Air Act authorizes the Environmental Protection Agency ("EPA") to demand "information" it "may reasonably require" to determine if

---

[2] "Defeat device means an auxiliary emission control device (AECD) that reduces the effectiveness of the emission control system . . . ."  40 C.F.R. § 86.1803–01.  *See also Pirnik v. Fiat Chrysler Automobiles, N.V.*, No. 15-cv-7199 (JMF), 2017 WL 3278928, at *2 n.1 (S.D.N.Y. Aug. 1, 2017) ("A 'defeat device' [includes] software that allows a vehicle to 'cheat' an emissions test").

[3] Indeed, "not all AECDs . . . are 'defeat devices.'"  *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs. & Prod. Liab. Litig.*, 273 F. Supp. 3d 1377, 1379 & n.6 (U.S. Jud. Pan. Mult. Lit. 2017); *see also Pirnik*, 2017 WL 3278928, at *2 n.1 (some "emissions-regulating software . . . does not qualify as a 'defeat device'").

a "manufacturer or other person" subject to the statute's vehicle emissions rules is "in compliance" with the statute.  42 U.S.C. § 7542(a).

### 2.  The Communications Decency Act of 1996

Nearly three decades ago, in 1996, Congress enacted Section 230 of the Communications Decency Act "to promote the continued development of the Internet and other interactive computer services" and "to keep government interference in the medium to a minimum." *Force v. Facebook, Inc.*, 934 F.3d 53, 63 (2d Cir. 2019) (quoting 47 U.S.C. § 230(b)(1) and *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 28 (2d Cir. 2015)).  In pertinent part, Section 230(c) states: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  Section 230(e) exempts certain laws from the immunity conferred by Section 230.  *See* 47 U.S.C. § 230(e).

### B.  Factual Allegations

### 1.  The EZ Lynk System

The government seeks to hold the defendants liable for the manufacture and sale of the EZ Lynk System.  *See* Cmpl. ¶¶ 5, 91, 97.  The Complaint alleges that the EZ Lynk System "consists of three components."  Cmpl. ¶ 1.  One component of the EZ Lynk System is the "Auto Agent," which is "a physical device" that "plugs into" a vehicle.  Cmpl. ¶ 1.  Specifically, the Auto Agent "plugs into a vehicle's OBD port to access, override, or reprogram the vehicle's computer system," *i.e.*, its Electronic Control Units ("ECU").  Cmpl. ¶ 47.

Another "component" of the EZ Lynk System is "EZ Lynk's Internet-based service called the 'EZ Lynk Cloud.'"  Cmpl. ¶ 1.  It is "a cloud computing platform" that hosts "software" that "[t]hird-party companies and individuals create."  Cmpl. ¶¶ 1, 50.  In particular, the EZ Lynk Cloud hosts "calibration software called 'tunes' to reprogram . . . vehicles."  Cmpl. ¶ 49.  The defendants

4

do not make this software.  *See* Cmpl. ¶ 50.

The Complaint alleges that "[m]any" (but not all, or even most) "of the available tunes" on the EZ Lynk Cloud "are so-called 'delete tunes,' which are capable of defeating Emission-Related Elements of Design."  Cmpl. ¶ 49; *accord* Cmpl. ¶ 94 ("*Many* of the tunes used with the EZ Lynk System bypass, defeat, or render inoperative the software designed and installed [by the original manufacturers] to comply with [emissions] standards under the Clean Air Act") (emphasis added). The non-party "companies and individuals who write tunes" for use with the EZ Lynk System are called "technicians."  Cmpl. ¶ 50.

The third component is "the Auto Agent App, a smartphone application that connects the Auto Agent to the EZ Lynk Cloud."  Cmpl. ¶ 1; *see* Cmpl. ¶ 48.  "Once the Auto Agent is connected to the EZ Lynk Cloud through the Auto Agent App, drivers are able to send and receive data and software relating to their vehicles' computer systems."  Cmpl. ¶ 48.  The Complaint alleges that drivers use the Auto Agent App to access the EZ Lynk Cloud, connect with technicians, and transfer delete tunes to the Auto Agent device, which installs the software on their vehicle's computer system and defeats emissions controls.  *See* Cmpl. ¶¶ 51, 52.

### 2.  The Defendants

The defendants are EZ Lynk SEZC ("EZ Lynk"), Prestige Worldwide SEZC ("Prestige"), Bradley Gintz, and Thomas Wood.[4]

"EZ Lynk is a 'special economic zone' company organized in the Cayman Islands."  Cmpl. ¶ 10.  According to the Complaint, "EZ Lynk manufactures, offers to sell, and sells the EZ Lynk System."  Cmpl. ¶ 10.

Prestige is "a 'special economic zone' company organized in the Cayman Islands."  Cmpl.

---

[4] The Court refers to Gintz and Wood as the "Individual Defendants" and to Gintz, Wood, and EZ Lynk collectively as the "EZ Lynk Defendants."

¶ 11.  Prestige allegedly "purchas[es] the Auto Agent devices from EZ Lynk, and sell[s] the devices to distributors."  Cmpl. ¶ 11.

"Gintz is a co-founder and president of EZ Lynk."  Cmpl. ¶ 12.  He allegedly "owns one-half of EZ Lynk through" another company that "he wholly owns."  Cmpl. ¶ 12.  "Gintz is also a part-owner of Defendant Prestige."  Cmpl. ¶ 12.

"Wood serves as director of engineering of EZ Lynk."  Cmpl. ¶ 13.  Wood allegedly "owns one-half of EZ Lynk through" another company that "he wholly owns."  Cmpl. ¶ 13.  The government asserts that Wood "controls, directs, and manages the marketing and sale of the EZ Lynk System as well as the technical support for the EZ Lynk System."  Cmpl. ¶ 13.  "Wood is also a part-owner of Defendant Prestige."  Cmpl. ¶ 13.  Wood "owns" a separate "company that provides customer support for the EZ Lynk System."  Cmpl. ¶ 13.

### 3.   The Allegations that the EZ Lynk System is a Defeat Device

The Complaint asserts the government's conclusion that "Defendants Gintz, Wood, and EZ Lynk manufactured the EZ Lynk System as a device to defeat vehicles' emissions controls."  Cmpl. ¶ 47.  However, the specific factual allegations in the Complaint support Defendants' assertion that the EZ Lynk System is "neutral tool" that, by itself, "has **no** effect" on emissions.  Def. Mem. at 3 (emphasis in original).

The Complaint is clear that it is the "so-called 'delete tunes'" that "are capable of defeating Emission-Related Elements of Design."  Cmpl. ¶ 49.  The Complaint does not allege that any of the defendants create delete tunes.  Rather, it alleges that "[t]he EZ Lynk System is essential to drivers' acquisition and installation of . . . delete tunes."  Cmpl. ¶ 50.

The Complaint also broadly asserts that "Gintz, Wood, and EZ Lynk regularly collaborate with technicians" who create delete tunes.  Cmpl. ¶ 57.  The Complaint does not allege, however,

that the defendants participate in the creation of delete tunes.  *See* Cmpl. at 17 ("Defendants Enable the Creation of Effective Delete Tunes"); *see also* Gov. Mem. at 51 n.18.

The Complaint alleges that Gintz, Wood, and EZ Lynk "provide technicians with a free, cloud-based software program called the EZ Lynk ECU Profile Editor that enables them to create tunes for use with the EZ Lynk System, including tunes capable of deleting a vehicle's Emission-Related Elements of Design."  Cmpl. ¶ 59.  The Complaint alleges that a specific "technician" named "GDP Tuning" claimed on social media that "it had collaborated with EZ Lynk during the development of the EZ Lynk System."  Cmpl. ¶ 57.  The Complaint then alleges that "Gintz, Wood, and EZ Lynk similarly previewed the EZ Lynk System for Power Performance Enterprises, Inc. ("PPEI"), another creator of delete tunes."  Cmpl. ¶ 58.

The Complaint further asserts that "[i]n addition to enabling the creation of delete tunes for the EZ Lynk System, Defendants Gintz, Wood, and EZ Lynk profit from it."  Cmpl. ¶ 60.  More specifically, "[t]hey require technicians . . . to purchase 'tokens' in order to transfer delete tunes to drivers."  Cmpl. ¶ 60.  However, as the Complaint explains, a token is merely "a unit of time during which data is exchanged between a driver and a technician via the EZ Lynk Cloud."  Cmpl. ¶ 60.  Tokens are not specifically for delete tunes.  *See* Cmpl. ¶ 60.

The Complaint devotes several paragraphs to allegations that "[o]nline retailers," who are not parties to the case, sell the EZ Lynk System "bundled with various delete tunes."  Cmpl. ¶¶ 61, 62; *see* Cmpl. ¶¶ 12, 63.  For example, one retailer "offered the EZ Lynk System bundled with PPEI tuning for $1,349, which included tunes to delete emissions controls and add power to the engine once the emissions controls are disabled."  Cmpl. ¶ 62.[5]  The Complaint acknowledges that

---

[5] According to the Complaint, Gintz owns this retailer, Calvin's Auto Repair, LLC.  Cmpl. ¶¶ 12, 43, 62.  But Calvin's Auto Repair is not a defendant, and the Complaint does not assert claims against Gintz based on his ownership of that entity.

the EZ Lynk System "is also offered for sale separately (without tunes) by online retailers such as Amazon, eBay, and Walmart."  Cmpl. ¶ 63.

The Complaint is rife with allegations about activity in a "Facebook group" called "the EZ Lynk Forum."  Cmpl. ¶ 64.  According to the Complaint, "EZ Lynk maintains the EZ Lynk Forum."  Cmpl. ¶ 64.  It is "a resource for drivers seeking 'information and support for everything related to the EZ Lynk AutoAgent.'"  Cmpl. ¶ 64.

The Complaint asserts that, through this Facebook group, EZ Lynk "encourages" drivers to use its product to defeat emissions controls.  Cmpl. ¶ 2; *see also* Cmpl. ¶¶ 3, 64, 66.  Specifically, the Complaint alleges that "[h]undreds of posts on the EZ Lynk Forum," posted by non-parties, "refer to the use of the EZ Lynk System to 'delete' emissions controls."  Cmpl. ¶ 66.  The Complaint further alleges that unidentified "EZ Lynk representative[s]" have "liked" and "loved" these posts.  Cmpl. ¶ 66.  Specifically, the Complaint alleges:

- A driver posted, "Finally made the jump and deleted my 14 Ram 2500: Holy hell [] this thing is awesome! The EZ lynk worked flawlessly, albeit I was a nervous wreck during the tune flash," adding that "the guys at EZ lynk are doing great work!" The driver tagged an EZ Lynk representative, who later "loved" the post.

- Another driver posted to the EZ Lynk Forum, "Had a few small issues with my ez lynk install. Got in touch with the tech support. All issues resolved. Couldn't be happier with my ez lynk. Truck has shown huge improvement with the deletes and new tunes." Again, an EZ Lynk representative "loved" the post.

- A driver wrote that the driver's "ez Lynk/delete set up will arrive on my door step next week," noting that the driver had questions about setting it up. Another poster responded, "If you have issues ezlynk customer service is real good," and an EZ Lynk representative "liked" the post.

Cmpl. ¶ 66 (emphases omitted).

The Complaint asserts that "EZ Lynk technical support representatives use the EZ Lynk Forum to provide technical assistance to drivers to support deletion of emissions controls."  Cmpl.

¶ 67.  Specifically, the Complaint alleges:

- Another driver posted to the EZ Lynk Forum, "Installed ez Lynk on my 14 ram 3500 fully deleted the other day [and] as soon as it loaded" certain dashboard Malfunction Indicator Lights illuminated. The driver asked if anyone else had experienced the same problem. EZ Lynk's Technical Support Representative provided several long and detailed responses about how to fix the problem, and the driver wrote "[p]roblems fixed with the help of EZ Lynk's Technical Support Representative and hpp tunes."

- A driver posted on Facebook in the EZ Lynk Forum, "[J]ust installed an ez lynk from ppei and egr delete . . . [but] I have no ecu profiles from ppei? What's going on here?" In response, EZ Lynk's Technical Support Representative and PPEI's owner posted questions and advice to troubleshoot the issue with the delete process. Ultimately, PPEI's owner fixed the driver's issue remotely through the EZ Lynk Cloud, and the driver responded by posting, "Thank you so much for the awesome service! I love the way the truck is now being deleted!"

- A driver posted, "My ezlynk has worked great since the day I had it installed! Even going from stock to deleted I had ZERO issues! I just wanted everyone to know this is a great system and my pickup runs great, zero smoke and my mpg's went up about 6mpg. SHIT!! I just can't believe how well it connects and never gives me issues! Even when I had a small situation I CALLED THEM and BAM!! Problem solved! Good day." In response, an EZ Lynk representative "loved" this post.

Cmpl. ¶ 67 (emphases omitted).

The Complaint then marches through numerous comments and videos that people (not the defendants or their alleged representatives) have posted on YouTube.com, reddit.com, and niche "automotive enthusiast websites" about the use of the EZ Lynk System to acquire and install delete tunes.  Cmpl. ¶¶ 53, 54, 71, 72, 77.

Significantly, the Complaint does not allege that Prestige manufactures or sells the EZ Lynk System.  Rather, the Complaint alleges that Prestige purchases and sells only "the Auto Agent devices."  Cmpl. ¶ 11.  Furthermore, the Complaint is completely devoid of allegations about Prestige hosting or interacting with "posts" about the use of the Auto Agent to defeat emissions controls.

### C.  The Section 208 Request for Information

On October 17, 2018, the EPA issued a request for information to EZ Lynk.  *See* Gov. 56.1 ¶ 1; Def. Counter 56.1 at 1–2; Kulschinsky Decl. ¶ 3; Kulschinsky Decl., Ex. A [ECF No. 50-1]. The government acknowledges that EZ Lynk both produced some responsive information from the outset and later supplemented its responses.  *See* Kulschinsky Decl. ¶¶ 4 ("Along with its written responses, EZ Lynk produced 101 pages of documents"), 5 ("EZ Lynk produced 310 pages of documents"), 6, 7, 10 (233 pages of documents); Kulschinsky Decl., Exs. B, C, H [ECF Nos. 50-2, 50-3, 50-8]; *see also* Def. Counter 56.1 at 7, 12, 16.

EZ Lynk refused to provide certain information and "asked to 'defer supplementation'" of certain information, which deferral request the government denied.  Kulschinsky Decl. ¶¶ 4, 6, 7, 8, 11, 12; *see also generally* Def. Counter 56.1.  In particular, EZ Lynk asserted that some of the information sought was "confidential business information . . . pursuant to EPA's regulations" and provided a privilege log.  Kulschinsky Decl. ¶¶ 4, 13; *see* Def. Counter 56.1 at 3, 5, 18.  EZ Lynk also refused to provide certain information on the grounds that the requests were "premature, subject to data privacy provisions, subject to the Cayman Islands' Confidential Information Disclosure Law," subject to a confidentiality order issued in unrelated litigation, or otherwise objectionable.  Kulschinsky Decl. ¶ 11, Kulschinsky Decl., Ex. H.

### D.  Procedural History

The government initiated this case by filing a complaint against Defendants EZ Lynk, Prestige, Gintz, and Wood [ECF No. 1 (the "Complaint" or "Cmpl.")].  The Complaint asserts two claims for relief.  First, the government alleges that all four of the defendants are liable for violating Section 203 of the Clean Air Act.  Cmpl. ¶¶ 90–100.  Second, the government alleges that EZ Lynk, Gintz, and Wood (but not Prestige) are liable for violating the "information-gathering"

provision in Section 208(a) of the Clean Air Act.  Cmpl. ¶¶ 101–113.

Defendants move to dismiss both claims [ECF Nos. 42, 44 ("Def. Mem."), 45], and the government opposes the motion to dismiss.  The government cross-moves for partial summary judgment [ECF Nos. 46, 47 ("Gov. Mem."), 48 ("Gov. 56.1"), 49, 50 ("Kulschinsky Decl.")].  It seeks summary judgment on its claim that EZ Lynk, Gintz, and Wood violated Section 208 of the Clean Air Act.  Defendants oppose the government's summary judgment motion [ECF No. 55 ("Reply and Opp."), 56 ("Def. Counter 56.1")].

The Court granted Defendants' request to stay discovery pending resolution of their motion to dismiss [ECF No. 61].  The Clerk's Office stayed the entire case in error.  When this error came to the Court's attention, the Court acted on the parties' motions as promptly as possible, consistent with the other demands of the Court's docket.

## II.   <u>LEGAL STANDARDS</u>

### A.  **Rule 12(b)(6)**

To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The allegations must raise "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  The Court must "accept all factual allegations as true and draw all reasonable inferences in plaintiff's favor."  *Ofori-Tenkorang v. Am. Int'l Grp., Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).  However, the Court need not accept conclusory assertions.  *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).  Even at the pleading stage, the Court is not required to accept the truth of assertions in a pleading that are "contradicted by more specific allegations or documentary evidence."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

**B. Summary Judgment**

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006). The court must not weigh the evidence. *Id.* If there is any evidence in the record that supports the opposing party, summary judgment is not appropriate. *See Brooklyn Ctr. For Indep. of the Disabled v. Metro. Transportation Auth.*, 11 F.4th 55, 64 (2d Cir. 2021).

## III.   <u>ANALYSIS</u>

The gravamen of Defendants' motion to dismiss is that the EZ Lynk System is a "neutral tool" that has no effect on emissions without third-party content. Def. Mem. at 3. Defendants argue that Section 230 of the Communications Decency Act immunizes them from all potential liability under the Clean Air Act. Defendants also argue that, in any event, the government fails to allege that the EZ Lynk System is a defeat device within the meaning of Section 203 of the Clean Air Act. Furthermore, according to Defendants, since Section 203 of the Clean Air Act does not apply to them, the government lacked authority to request information pursuant to Section 208 of the Clean Air Act, and that claim, too, should be dismissed.

As explained below, the government adequately alleges that the EZ Lynk System is a defeat device within the meaning of Section 203 of the Clean Air Act, which expressly provides for liability when a defendant "knows or should know" its product is used to defeat emissions controls. 42 U.S.C. § 7522(a)(3)(B). However, Section 230 of the Communications Decency Act immunizes Defendants from liability under Section 203 of the Clean Air Act. Section 230 provides

broad immunity for a defendant whose "Internet-based service," Cmpl. ¶ 48, hosts, "arrang[es]," and "distribut[es]" unlawful "third-party content unless the defendant directly and 'materially' contributed to what made the content itself 'unlawful,'" *Force*, 934 F.3d at 66, 68 (quoting *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 174 (2d Cir. 2016)).  As explained below, Section 230 of the Communications Decency Act does not immunize the EZ Lynk Defendants from liability under Section 208 of the Clean Air Act, but the government is not entitled to summary judgment on that claim.

### A.  The Section 203 Claim

#### 1.  The Complaint Alleges that the EZ Lynk System is a Defeat Device within the Meaning of Section 203 of the Clean Air Act.

Based on the text of Section 203 of the Clean Air Act and the allegations in the Complaint, the government adequately alleges that the EZ Lynk System is a defeat device and states the elements of a *prima facie* claim against EZ Lynk.  However, as explained below, the same reasoning does not apply to Prestige and the Individual Defendants.

Section 203 of the Clean Air Act makes it illegal for a person, including a company, "to manufacture or sell" a "part or component intended for use with . . . any motor vehicle" if "a principal effect" of the part or component is to "defeat" emissions controls "and where the person knows or should know" that it is "put to such use."  42 U.S.C. § 7522(a)(3)(B).

The Complaint alleges that "EZ Lynk manufactures . . . and sells the EZ Lynk System." Cmpl. ¶ 10.  The Complaint adequately alleges that the EZ Lynk System is a "part or component intended for use with" a "motor vehicle."  42 U.S.C. § 7522(a)(3)(B).  Specifically, the Complaint alleges that the EZ Lynk System consists of the Auto Agent device, the EZ Lynk Cloud, and the Auto Agent App.  *See* Cmpl. ¶¶ 1, 48, 49, 51, 52.  It further alleges that the Auto Agent "plugs into a vehicle's OBD port," and "[o]nce the Auto Agent is connected to the EZ Lynk Cloud through

the Auto Agent App, drivers are able to send and receive data and software relating to their vehicles' computer systems." Cmpl. ¶¶ 47, 48.

Defendants argue that the EZ Lynk System is not a part or component because, Defendants assert, the EZ Lynk System is instead a "scan tool," as defined by an implementing regulation of the Clean Air Act. Def. Mem. at 27 (citing 40 C.F.R. § 86.1808-01(f)(2)(ii)(G)). However, "part" is a capacious term. The Court need not look beyond the text of the statute and the allegations in the Complaint to conclude that the EZ Lynk System, whose hardware has to be plugged into the car, is a car part. *See City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 296 (2013).

The Complaint also adequately alleges that "a principal effect" of the EZ Lynk System is to "defeat" emissions controls and that EZ Lynk "knows or should know" that it is "put to such use." 42 U.S.C. § 7522(a)(3)(B). In particular, the Complaint alleges that "EZ Lynk has enabled many thousands of drivers across the United States to use the EZ Lynk System to 'delete' emissions controls from Ford, GMC, and Chrysler trucks, among other vehicles." Cmpl. ¶ 2. It alleges that "[m]any" of the "tunes" available for use with the EZ Lynk System are "capable of defeating" emissions controls." Cmpl. ¶ 49. The Complaint further alleges that "[h]undreds of posts" on the "EZ Lynk Forum," the Facebook group that EZ Lynk allegedly maintains, and numerous posts on numerous other sites, discuss using the EZ Lynk System to defeat emissions controls. Cmpl. ¶¶ 53, 54, 64, 66, 71, 72, 77. This is sufficient to allege that EZ Lynk should know that defeating emissions controls is "*a* principal effect" of the EZ Lynk System. 42 U.S.C. § 7522(a)(3)(B) (emphasis added).

Thus, the government adequately alleges that the EZ Lynk System is a defeat device and states the elements of a *prima facie* claim against EZ Lynk. However, the same reasoning does not apply to Prestige. According to the Complaint, Prestige does not manufacture or sell the EZ

14

Lynk System; rather, Prestige sells only the Auto Agent device.  Cmpl. ¶ 11.  But, as the Complaint makes clear, drivers need all "three components" of the EZ Lynk system to acquire and install emissions-defeating software.  Cmpl. ¶ 1; *see* Cmpl. ¶¶ 48, 49.  The Auto Agent, by itself, cannot have "a principal effect" of defeating emissions controls, and Section 203 of the Clean Air Act does not prohibit selling merely one part of a prohibited "part."  42 U.S.C. § 7522(a)(3)(B).  The government, therefore, fails to state a claim under Section 203 of the Clean Air Act against Prestige.  Accordingly, since the government does not assert its Section 208 claim again Prestige, the Court dismisses this action as to Prestige.

Turning to the Individual Defendants, they argue that they "are shielded from liability by not one, but two layers of legitimate business organizations" and holding them personally liable "would turn the governing principles of corporate law upside down."  Def. Mem. at 4.  Maybe so. The government, citing out-of-circuit cases and cases interpreting a different statute, responds only that the Individual Defendants "are liable for 'causing' EZ Lynk and Prestige to violate the Clean Air Act," both "through their own actions" and "as corporate officers."  Gov. Mem. at 36–45.  The Court declines to decide whether, based on the allegations in this Complaint, the Individual Defendants could be liable under Section 203 of the Clean Air Act because the Court concludes that Section 230 of the Communications Decency Act immunizes the Individual Defendants from such liability in any event.

### 2. It Is Clear on the Face of the Complaint that Section 230 of the Communications Decency Act Immunizes the EZ Lynk Defendants from Liability under Section 203 of the Clean Air Act.

The EZ Lynk Defendants argue that Section 230 of the Communications Decency Act immunizes them from liability under Section 203 of the Clean Air Act.  The government tries to

dismiss this argument out of hand.  However, it is clear on the face of the Complaint that Section 230 immunizes the EZ Lynk Defendants.

Section 230 of the Communications Decency Act commands that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  The Second Circuit, like the "majority of federal circuits," interprets Section 230 to "establish broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service."  *Herrick v. Grindr LLC*, 765 F. App'x 586, 589 (2d Cir. 2019) (brackets omitted) (quoting *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006)).  To satisfy the test for immunity: (1) the defendant must be "a provider or user of an interactive computer service"; (2) "the claim" must be "based on information provided by another information content provider"; and (3) "the claim would treat the defendant as the publisher or speaker of that information.'"  *Herrick*, 765 Fed. App'x at 589 (quoting *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016)); *see Saveene Corp. v. Remo*, No. 21-cv-399 (LGS), 2021 WL 4806380, at *2 (S.D.N.Y. Oct. 14, 2021).  Section 230 generally is construed broadly in favor of immunity.  *Force v. Facebook, Inc.*, 934 F.3d 53, 64 (2d Cir. 2019).

The government, in the first instance, tries to dodge the question of immunity by arguing that Section 230 is an affirmative defense that the Court should not consider on a motion to dismiss.  For this proposition, the government relies on a District of Connecticut judge citing her own previous opinion and omits the internal citation.  Gov. Mem. at 46 (citing *FTC v. LeanSpa, LLC*, 920 F. Supp. 2d 270, 275 (D. Conn. 2013)).  But the Second Circuit has explained that "the application of Section 230(c)(1) is appropriate at the pleading stage when, as here, the 'statute's barrier to suit is evident from the face of' [the] complaint."  *Force*, 934 F.3d at 63 n.15 (quoting

*Ricci*, 781 F.3d at 28).

The Second Circuit has affirmed dismissal at the pleading stage in several of its key cases interpreting Section 230.  *See Force*, 934 F.3d at 75; *Ricci*, 781 F.3d at 28; *Herrick*, 765 F. App'x at 591.  It has explained that "Section 230 immunity, like other forms of immunity, is generally accorded effect at the first logical point in the litigation process."  *Domen v. Vimeo, Inc.*, 991 F.3d 66, 73 (2d Cir. 2021), *reh'g granted and opinion vacated*, 2 F.4th 1002 (2d Cir. 2021), *and amended and superseded on reh'g*, 6 F.4th 245 (2d Cir. 2021), *opinion withdrawn*, 2021 WL 4399692 (2d Cir. Sept. 23, 2021), *and amended and superseded on reh'g*, 2021 WL 4352312 (2d Cir. Sept. 24, 2021).  As such, courts in this District have applied Section 230 to dismiss cases at the pleading stage.  *See Ratermann v. Pierre Fabre USA, Inc.*, 651 F. Supp. 3d 657, 670 (S.D.N.Y. 2023); *Saveene*, 2021 WL 4806380, at *2.

Based on the allegations in the Complaint, the EZ Lynk Defendants meet the first test for immunity because they provide an "interactive computer service." *LeadClick Media*, 838 F.3d at 173.  The Communications Decency Act defines an interactive computer service as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server . . . ." 47 U.S.C. § 230(f)(2).  This definition "has been construed broadly." *Ricci*, 781 F.3d at 28.  The Complaint alleges that the defendants provide, as one component of the EZ Lynk System, "EZ Lynk's Internet-based service called the 'EZ Lynk Cloud.'"  Cmpl. ¶ 1.  The Complaint alleges that it is "a cloud computing platform" that hosts "software" that "[t]hird-party companies and individuals create."  Cmpl. ¶¶ 1, 50.  Because the EZ Lynk Defendants provide the EZ Lynk Cloud, they provide an interactive computer service within the meaning of the Communications Decency Act.

In arguing the merits of the immunity question, the government protests that the EZ Lynk System is not an interactive computer service.  Gov. Mem. at 47–48.  The government contends that Section 230 immunity is for "messaging board[s]" where individuals post "political, educational, cultural, and entertainment" comments.  Gov. Mem. at 47, 48.  The government argues that "Section 230 was enacted against the backdrop of specific Congressional findings" about the need to protect fledgling internet resources for education, information, and discourse.  Gov. Mem. at 48.  The government insists that "the EZ Lynk System's purpose is not to encourage discourse but instead to delete emissions controls."  Gov. Mem. at 48 (internal quotation marks and citations omitted).

Contrary to the government's suggestion Section 230 immunity is not reserved for social media platforms.  *See Saveene Corp.*, 2021 WL 4806380, at *3 (applying Section 230 immunity to a defendant that "lists and provides an online trading platform for various stocks" and "disseminates information on listed companies").  In *Ratermann v. Pierre Fabre USA, Inc.*, a court in this District concluded that the retailers "Walmart, Amazon, and Ulta fall comfortably within th[e] definition" of interactive computer services because they "operate websites" that sell "third-party products."  651 F. Supp. 3d at 666; *see also Eberhart v. Amazon.com, Inc.*, 325 F. Supp. 3d 393, 400 n.5 (S.D.N.Y. 2018); *Almeida v. Amazon.Com, Inc.*, 2004 WL 4910036, at *4 (S.D. Fla. July 30, 2004) (concluding that Amazon is an "interactive computer service" because "[i]ts primary function is to allow multiple users to a computer service the ability to purchase various items"), *aff'd* 456 F.3d 1316 (11th Cir. 2006).

In the government's own words, an "interactive computer services provide users with a forum in which to exchange information and ideas."  Gov. Mem. at 47.  Software is information, albeit presented in code.  The Complaint alleges the EZ Lynk Cloud is a platform on which people

exchange information in the form of software.  *See* Cmpl. ¶¶ 1, 50, 51.  Thus, according to the government's own account of the nature of an interactive computer service, the Complaint alleges that the EZ Lynk Defendants provide an interactive computer service.[6]

The Court declines the invitation to speculate that Congress might not have intended to protect this kind of information when it enacted Section 230 in 1996.  "To ascertain Congress's intent," the Court looks to "the statutory text."  *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 116 (2d Cir. 2007).  The statutory definition of an interactive computer service plainly applies to the Complaint's allegations about the EZ Lynk Cloud.

The EZ Lynk Defendants also satisfy the other tests for immunity: the government's Section 203 claim is "based on information provided by another information content provider," and the government seeks to treat the EZ Lynk Defendants as the "publisher" of the third-party content.  *LeadClick Media*, 838 F.3d at 173.  The government's Section 203 claim is based on the use of the EZ Lynk System to acquire and install third-party software capable of defeating emissions controls.  Cmpl. ¶¶ 49, 50.  The Complaint expressly alleges that the software is created by "[t]hird-party companies and individuals."  Cmpl. ¶ 50.  The government faults the EZ Lynk Defendants for making the software publicly available.  *See* Cmpl. ¶ 51; *LeadClick Media*, 838 F.3d at 173.  In the absence of the emissions-defeating software created by third parties, and the EZ Lynk Defendants' publication and transmission of that software to drivers via the EZ Lynk Cloud, the government would not have a Section 203 claim against the EZ Lynk Defendants.  Thus,

---

[6] The government further argues that the EZ Lynk System cannot be an interactive computer service because it "has a key hardware component—the EZ Lynk Auto Agent."  Gov. Mem. at 47.  This argument is not persuasive.  "Facebook is a provider of an 'interactive computer service,'" *Force*, 934 F.3d at 64, but it makes hardware, too.  *See* https://www.forbes.com/sites/mnunez/2019/09/18/facebook-moves-deeper-into-hardware-with-the-launch-of-three-new-portal-devices/?sh=1e95e9ec4bea.

the EZ Lynk Defendants meet the tests for Section 230 immunity from liability under Section 203. *See LeadClick Media*, 838 F.3d at 173.

The government argues that it merely seeks to hold the EZ Lynk Defendants accountable for their own misconduct.  Gov. Mem. at 48–52.  It asserts in its brief that "Defendants are themselves 'information content providers,' 47 U.S.C. § 230(c)(1), who bear responsibility for the creation and installation of delete tunes."  Gov. Mem. at 50.  However, the Complaint does not allege that the EZ Lynk Defendants create delete tunes.  On the contrary, the Complaint expressly alleges that delete tunes are created by "[t]hird-party companies and individuals."  Cmpl. ¶ 50. The Complaint alleges that the EZ Lynk System "is essential to drivers' acquisition and installation of . . . delete tunes."  Cmpl. ¶ 50.  But this means EZ Lynk is "distributing" information, which is precisely what Section 230 immunizes.  *Force*, 934 F.3d at 66.

The government asserts, in conclusory fashion, that the EZ Lynk Defendants "collaborate" in unlawful conduct.  Gov. Mem. at 51.  However, that assertion is "contradicted by more specific allegations" in the Complaint.  *L-7 Designs, Inc.*, 647 F.3d at 422.  As Defendants point out, the government "does not—and cannot—allege that EZ Lynk collaborated with any technicians to develop software or 'delete tunes.'"  Def. Mem. at 8.  The government does not disagree.  Rather, the government asks the Court to *infer* that the EZ Lynk Defendants collaborated in the creation of emissions-defeating software.  Gov. Mem. at 51 n.18.

The allegations in the Complaint do not support the "reasonable inference" that the EZ Lynk Defendants have collaborated in the creation of delete tunes, however.  *Ofori-Tenkorang*, 460 F.3d at 298.  For example, the Complaint specifically alleges that a particular "technician" named GDP Tuning stated, on Facebook, that "it had collaborated with EZ Lynk during the development of the *EZ Lynk System*."  Cmpl. ¶ 57 (emphasis added).  The Complaint further

alleges that the EZ Lynk Defendants "previewed the EZ Lynk System" for a "creator of delete tunes." Cmpl. ¶ 58. These allegations do not support a "reasonable inference" that the EZ Lynk Defendants participated in the *creation of delete tunes*. *Ofori-Tenkorang*, 460 F.3d at 298. Indeed, these guilt-by-association allegations fail to raise "more than a sheer possibility" that the EZ Lynk Defendants did anything untoward. *Iqbal*, 556 U.S. at 678.

The government maintains that "Defendants encourage EZ Lynk users to obtain and install delete tunes." Gov. Mem. at 51. The government cites a paragraph of the Complaint describing "[h]undreds of posts" on the "EZ Lynk Forum," a Facebook page "EZ Lynk maintains." Cmpl. ¶¶ 64, 66. The Complaint specifically describes three posts by "driver[s]" (*i.e.* not the EZ Lynk Defendants) that unidentified EZ Lynk "representatives" (*i.e.* not the EZ Lynk Defendants) "liked" or "loved." Cmpl. ¶ 66.

As an initial matter, the government argues that the EZ Lynk Defendants "encourage[]" unlawful conduct simply by maintaining the EZ Lynk Forum. *See* Cmpl. ¶¶ 2, 67. The Second Circuit has squarely rejected similar arguments. The Circuit has explained that such an "argument would eviscerate Section 230(c)(1)," since "a defendant interactive computer service would be ineligible for Section 230(c)(1) immunity by virtue of simply organizing and displaying content exclusively provided by third parties." *Force*, 934 F.3d at 66.

Furthermore, allegations that unidentified EZ Lynk "representatives" "liked" or "loved" Facebook posts by drivers who praised EZ Lynk are not sufficient. Cmpl. ¶ 66. Rather, in this Circuit, a defendant is immune unless it "directly and 'materially' contributed to what made the content itself 'unlawful.'" *Force*, 934 F.3d at 68 (quoting *LeadClick Media*, 838 F.3d at 174). As explained above, the Complaint does not allege that Defendants directly and materially contributed to the creation of emissions-defeating software.

The government asserts that, via the Facebook page, EZ Lynk representatives went so far as to help drivers use the EZ Lynk System to defeat emissions controls. *See* Gov. Mem. at 8, 25. The Complaint does allege that drivers posted about receiving assistance from EZ Lynk customer service. Cmpl. ¶ 67. However, even though the government perused "[h]undreds of posts," Cmpl. ¶ 66, the Complaint does not include any posts that clearly state or imply that an EZ Lynk customer service representative helped a driver defeat emissions controls.

The Complaint specifically alleges, for example, that one driver wrote: "Had a few small issues with my ez lynk install. Got in touch with the tech support. All issues resolved. Couldn't be happier with my ez lynk. *Truck has shown huge improvement with the deletes and new tunes*." Cmpl. ¶ 66 (emphasis added). This is *not* an allegation that EZ Lynk "tech support" helped the driver acquire and download emissions-deleting software. The post reflects only that EZ Lynk "tech support" helped the driver install the EZ Lynk System and that the driver installed "deletes," as well as other "new tunes." Cmpl. ¶ 66.

The Complaint also alleges that another driver wrote: "If you have issues ezlynk customer service is real good." Cmpl. ¶ 66. Again, this falls far short of an allegation that anyone affiliated with the EZ Lynk Defendants helped a driver to defeat emissions controls.

In another supposed example that the EZ Lynk Defendants encourage the illegal use of the EZ Lynk System, the Complaint describes the following exchange: a driver sought assistance when "certain dashboard Malfunction Indicator Lights illuminated" on his "fully deleted" truck, and "EZ Lynk's Technical Support Representative provided several long and detailed responses about how to fix the problem." Cmpl. ¶ 67. The government stresses that the truck was "deleted." Cmpl. ¶ 67. However, based on the government's own allegations, the "problem" EZ Lynk's Technical Support Representative responded to was "Malfunction Indicator Lights." Cmpl. ¶ 67. Yet again,

there is no allegation that anyone affiliated with the EZ Lynk Defendants helped the driver install the emissions-deleting software.

The social media posts in the Complaint are useful to show what EZ Lynk knew or should have known for purposes of stating a claim under Section 203 of the Clean Air Act.[7] *See* 42 U.S.C. § 7522(a)(3)(B).  However, they fall far short of alleging direct and material contributions to illegal activity for purposes of nullifying immunity under Section 230 of the Communications Decency Act.[8] *See Force*, 934 F.3d at 68.  Because Defendants meet the tests for such immunity, the Section 203 claim must be dismissed.

### B.  The Government States a Claim under Section 208, But it Is Not Entitled to Summary Judgment on that Claim.

The government contends that the EZ Lynk Defendants are all liable, as a matter of law, for violations of Section 208 of the Clean Air Act, which authorizes the EPA to request information regarding compliance with certain provisions of the Clean Air Act, including the defeat device prohibition.  Defendants seek dismissal of the Section 208 claim, and the government seeks summary judgment. The EPA had the authority to investigate the EZ Lynk System, and, thus, to request information pursuant to Section 208 of the Clean Air Act.  However, obvious disputes of fact preclude granting the government summary judgment, at the pleading stage, on its claim that the EZ Lynk Defendants violated the statute.

Section 208 of the Clean Air Act states:

Every manufacturer of new motor vehicles or new motor vehicle engines, and every manufacturer of new motor vehicle or engine parts or components, and other persons subject to the requirements of this part or part C, shall establish and

---

[7] The allegations were likely drafted for that purpose, and the government did not anticipate the Section 230 immunity defense.  But the government does not seek leave to amend.

[8] Given that the government responds to the defense by arguing (without support in the Complaint) that the EZ Lynk Defendants facilitated the installation of delete tunes, it is telling that the government bases its Section 230 claim on allegations that the EZ Lynk Defendants manufacture and sell a defeat device, and not that they install a defeat device, even though such installation is another basis for liability under Section 203. *See* 42 U.S.C. § 7522(a)(3)(B).

maintain records, perform tests where such testing is not otherwise reasonably available under this part and part C (including fees for testing), make reports and provide information the Administrator may reasonably require to determine whether the manufacturer or other person has acted or is acting in compliance with this part and part C and regulations thereunder, or to otherwise carry out the provision of this part and part C, and shall, upon request of an officer or employee duly designated by the Administrator, permit such officer or employee at reasonable times to have access to and copy such records.

42 U.S.C. § 7542(a).

The parties engage in a long, complicated argument about whether EZ Lynk, Gintz, and Wood are "among the classes of entities subject to the [EPA's] information-gathering authority" under Section 208. *See* Def. Mem. at 43–46; Gov. Mem. at 27–33. The statute is clear. Section 208 requires any "persons subject to the requirements of this part"—that is, the "part" of the Clean Air Act that contains both Section 203 and Section 208—to "provide information" that the EPA "may reasonably require to determine whether the manufacturer or other person has acted or is acting in compliance with this part." 42 U.S.C. § 7542(a). In other words, the EPA may demand information from any person who is subject to the vehicle emissions rules of the Clean Air Act to investigate whether that person is violating the vehicle emissions rules of the Clean Air Act. For all of the reasons discussed above, the government adequately alleges that Section 203 applies to the EZ Lynk Defendants. Thus, the EPA had authority under Section 208 to investigate whether the EZ Lynk Defendants were violating Section 203.

Defendants argue that the Court should, nevertheless, dismiss the government's claim under Section 208 of the Clean Air Act because they are immune from liability under Section 230 of the Communications Decency Act. But Section 230 of the Communications Decency Act has nothing to say about whether the defendants violated their own obligation to "provide information" to the EPA. The government's Section 208 claim does not seek to hold the EZ Lynk Defendants liable for distributing third-party content, which, as discussed above, is required for a Section 230

immunity defense.  *See LeadClick Media*, 838 F.3d at 173.

The government obviously is not entitled to summary judgment on its claim that the EZ Lynk Defendants violated Section 208, however.  This is not a case in which the defendants stonewalled the EPA.  The government acknowledges that EZ Lynk responded, produced hundreds of pages of documents, and thereafter supplemented its responses.  *See* Kulschinsky Decl. ¶¶ 4 ("Along with its written responses, EZ Lynk produced 101 pages of documents"), 5 ("310 pages of documents"), 6, 7, 10 ("233 pages of documents"); Kulschinsky Decl., Exs. B, C, H [ECF Nos. 50-2, 50-3, 50-8].  EZ Lynk also produced a privilege log.  Kulschinsky Decl. ¶ 13.  The parties dispute whether the EZ Lynk's responses and privilege log were adequate.  *See* Gov. 56.1 ¶ 51; Def. Counter 56.1 at 32; Kulschinsky Decl. ¶¶ 13, 23.

The government falls far short of establishing that there are no material disputes of fact and that the government is entitled to judgment as a matter of law.  *See Celotex*, 477 U.S. at 323. Section 208 empowers the EPA to demand only information that it may "reasonably require" to determine compliance with vehicle emissions rules.  42 U.S.C. § 7542(a).  Defendants argue that the EPA demanded far more, and the parties specifically dispute whether the EPA ever provided "a detailed explanation for why the information sought was reasonably required."  Kulschinsky Decl. ¶ 6.  Defendants maintain that the EPA provided no explanation for why the information sought was reasonably required in the original October 2018 request and inadequate explanations in a later March 2019 letter.  *See* Def. Counter 56.1 at 3, 4, *passim*; *see also* Kulschinsky Decl., Exs. A, D.  More importantly, there is a genuine dispute whether the information the EPA sought was "reasonably require[d]," 42 U.S.C. § 7542(a), or overbroad.  It would be inappropriate on summary judgment for the Court to evaluate the limited evidence before it and rule on these disputes.  *See Jaegly*, 439 F.3d at 151.

Moreover, there is further dispute whether the EPA directed its information requests to the Individual Defendants, whom the government seeks to hold individually liable, in addition to EZ Lynk.  The government offers evidence that the "208 Request was addressed to EZ Lynk and to Thomas Wood and Bradley Gintz as officers of EZ Lynk."  Kulschinsky Decl. ¶ 3; Kulschinsky Decl., Ex. A.  The defendants contend, however, that the Individual Defendants were listed on the requests as "mere addresses."  Def. Mem. at 43.

By the government's own account, the "EPA issued a request for information *to EZ Lynk* pursuant to Section 208."  Kulschinsky Decl. ¶ 3 (emphasis added).  Virtually every paragraph of the government's 56.1 statement and the Kulschinsky declaration describes what *EZ Lynk* did to comply or fail to comply without mentioning the Individual Defendants.  Summary judgment is inappropriate where there is any evidence in the record to support the non-moving party.  *Brooklyn Ctr. For Indep. of the Disabled*, 11 F.4th at 64.  Because the government's own submissions raise a question whether the EPA directed its 208 request to the Individual Defendants, the government is not entitled to summary judgment on its Section 208 claim against them.

## C.  <u>CONCLUSION</u>

For the reasons set forth above, Defendants' motion to dismiss is GRANTED with respect to the claim under Section 203 of the Clean Air Act and DENIED in with respect to the claim under Section 208 of the Clean Air Act.  The government's motion for partial summary judgment is DENIED. The Clerk of Court respectfully is requested to terminate the motions pending at docket entries 42 and 46.

**SO ORDERED.**

Date:  **March 28, 2024**
     **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**